**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2022-NMCA-025**

**Filing Date: December 22, 2021**

**No. A-1-CA-37734**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**KEVIN BARLOW REED,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

Certiorari Denied, May 3, 2022, No. S-1-SC-39187; Cross-Petition Denied, February 24, 2022, No. S-1-SC-39187. Released for Publication June 14, 2022.

Hector H. Balderas, Attorney General
Anne Minard, Assistant Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**HENDERSON, Judge.**

**{1}** A jury convicted Defendant Kevin Reed of one count each of armed robbery, contrary to NMSA 1978, Section 30-16-2 (1973); conspiracy to commit armed robbery, contrary to NMSA 1978, Section 30-28-2 (1979); false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963); possession of a firearm by a felon, contrary to NMSA 1978, Section 30-7-16(A)(1) (2001, amended 2020); aggravated battery with a deadly

weapon, contrary to NMSA 1978, Section 30-3-5(C) (1969); and two counts of aggravated assault with a deadly weapon, contrary to NMSA 1978, Section 30-3-2(A) (1963). Defendant appeals his convictions, claiming that he received ineffective assistance of counsel and that a number of his convictions violate his protection against double jeopardy. We reject Defendant's claim that the record on direct appeal establishes a prima facie case of ineffective assistance of counsel. However, we reverse Defendant's convictions for aggravated battery with a deadly weapon, one count of aggravated assault with a deadly weapon, and false imprisonment as we conclude that they violate his protection against double jeopardy. We remand this case to the district court to amend the judgment and sentence accordingly.

**BACKGROUND**

{2}    Two men robbed a restaurant in Alamogordo, New Mexico. In the evening, as the restaurant's owner, Katherine Budak, attempted to close the restaurant's door, the taller of the two men hit her on the head with a gun, causing her to fall to the floor and lose control of the door. In response to screams from Ms. Budak, a restaurant employee, Joanna Gunn, ran to the door, where she found Ms. Budak on the floor being physically attacked by the shorter man. The taller man stepped over Ms. Budak and entered the restaurant.

{3}    The taller man pointed guns at Ms. Gunn and the restaurant's other two employees and ordered them to lie down on the floor. Once Ms. Gunn was on the floor, he approached her and touched her near her throat with a gun. Ms. Gunn offered to retrieve the restaurant's money for the taller man, at which point he physically lifted her from the floor and ordered her to do so. The two men left the restaurant with between sixty and one hundred and fifty dollars.

{4}    About one month later, as Ms. Budak shopped in an Albertson's grocery store, she recognized a store employee, D'Andre Howell, as the shorter man from the robbery, and she contacted law enforcement. During their investigation, law enforcement officers had previously identified Mr. Howell and Defendant as suspects in the robbery. When questioned by law enforcement, Mr. Howell admitted to his involvement in the robbery and identified Defendant as the taller man who was with him that evening. A grand jury returned an indictment charging Defendant with several crimes based on the events from the evening of the robbery.

{5}    At trial, Mr. Howell testified against Defendant. Upon stipulation of fact by the parties, the district court relayed Defendant's status as a felon to the jury. The jury convicted Defendant of one count each of the following: armed robbery, conspiracy to commit armed robbery, false imprisonment, possession of a firearm by a felon, aggravated battery with a deadly weapon, and two counts of aggravated assault with a deadly weapon. He now appeals. We reserve further discussion of the pertinent facts for our analysis.

**DISCUSSION**

**I.     Defendant's Convictions for Aggravated Battery With a Deadly Weapon, One Count of Aggravated Assault With a Deadly Weapon, and False Imprisonment Must Be Vacated Because They Violate Defendant's Protection Against Double Jeopardy**

**{6}**     Defendant argues that his convictions for armed robbery, aggravated battery with a deadly weapon, aggravated assault with a deadly weapon, and false imprisonment, violate his protection against double jeopardy. Specifically, Defendant maintains that his conviction for armed robbery subsumes his convictions for the lesser offenses of aggravated battery with a deadly weapon, one count of aggravated assault with a deadly weapon, and false imprisonment. He further argues that his conviction for one count of aggravated assault with a deadly weapon subsumes his conviction for false imprisonment. We agree.

**{7}**     The United States and New Mexico Constitutions guarantee that criminal defendants may not "be twice put in jeopardy" for the same offense. U.S. Const. amend. V.; N.M. Const. art II, § 15. "The defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment." NMSA 1978, § 30-1-10 (1963). Claimed violations of the protection against double jeopardy are questions of law, which require de novo review. *State v. Contreras*, 2007-NMCA-045, ¶ 18, 141 N.M. 434, 156 P.3d 725.

**{8}**     In double description, double jeopardy cases, the defendant is convicted under multiple statutes for the same conduct. *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. Such is the case here. We therefore apply the test articulated in *Swafford v. State*, 1991-NMSC-043, ¶ 12, 112 N.M. 3, 810 P.2d 1223, and first ask "whether the conduct was unitary, meaning whether the same criminal conduct is the basis for both charges." *Bernal*, 2006-NMSC-050, ¶ 9. If it is not, the protection against double jeopardy has not been violated and we proceed no further. *Id.* If it is, we proceed to ask "whether the [L]egislature intended to create separately punishable offenses." *State v. Baroz*, 2017-NMSC-030, ¶ 22, 404 P.3d 769. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment[s] in the same trial." *Swafford*, 1991-NMSC-043, ¶ 25.

**{9}**     Our inquiry for unitary conduct turns on "sufficient indicia of distinctness" between the acts at issue. *Id.* ¶ 26; *see also State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227. Conduct is not unitary, rather it is separate and distinct, when space and time separates the events, or "the quality and nature of the acts or the objects and results involved are distinguishable[.]" *State v. Contreras*, 1995-NMSC-056, ¶ 14, 120 N.M. 486, 903 P.2d 288 (omission, internal quotation marks, and citation omitted). Likewise, conduct is not unitary "when one crime is completed before another is committed, or when the force used to commit a crime is separate from the force used to commit another crime." *Sena*, 2020-NMSC-011, ¶ 46. In conducting our analysis, we may consider "the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury." *Id.* "We also consider whether the facts presented at trial establish that the jury

reasonably could have inferred independent factual bases for the charged offenses." *State v. Schackow*, 2006-NMCA-123, ¶ 18, 140 N.M. 506, 143 P.3d 745 (internal quotation marks and citation omitted).

**{10}** Pursuant to the statute, the district court instructed the jury that to convict Defendant of armed robbery, it must find, in relevant part, that

> 1. [D]efendant took and carried away U.S. currency from [Ms.] Budak and/or [Ms.] Gunn or from their immediate control intending to permanently deprive [Ms.] Budak and/or [Ms.] Gunn of the U.S. [c]urrency; [and]
>
> . . . .
>
> 3. [D]efendant took the U.S. currency by force or violence or threatened force or violence[.]

*See* § 30-16-2; UJI 14-1621 NMRA. Where, as here, the jury instructions provide alternative bases for conviction of an offense, and the record is silent as to which alternative the jury relied on for its verdict, we apply the *Foster* presumption, which demands that we assume that the jury relied on the alternative that may violate the protection against double jeopardy. *See Sena*, 2020-NMSC-011, ¶ 47 (citing *State v. Foster*, 1999-NMSC-007, ¶ 28, 126 N.M. 646, 974 P.2d 140, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683).

**{11}** Our Supreme Court has recently held that "*Foster* does not require a further presumption that the same conduct was then relied upon by the jury in convicting [the d]efendant of each crime" and that "the *Foster* presumption is rebutted by evidence that each crime was completed before the other crime occurred." *Id.* ¶ 54; *see also State v. Vigil*, 2021-NMCA-024, ¶ 21, 489 P.3d 974, *cert. denied*, 2021-NMCERT-___ (No. S-1-SC-38748, Apr. 22, 2021). We have taken this direction from our Supreme Court as requiring us "to engage in an analysis of a defendant's conduct[.]" *State v. Phillips*, 2021-NMCA-062, ¶ 29 n.1, 499 P.3d 648, *cert. granted*, 2021-NMCERT-___ (No. S-1-SC-38910, Nov. 1, 2021). In *Sena*, the *Foster* presumption was rebutted because the facts of the case made plain that the offenses at issue "were separated by both time and intervening events." *Sena*, 2020-NMSC-011, ¶ 56.

**{12}** The state's conduct at the trial of the defendant in *Sena* stands in marked contrast to its conduct at Defendant's trial in this case. Here, contrary to the State's arguments, the completed offense principle does not control. As we explain, according to the State's theory of the case, articulated to the jury during closing arguments and presented in the jury instructions, there can be no neat delineation between Defendant's actions. In *Sena*,[1] however, "the [s]tate never communicated any theory to the jury nor did it argue any specific facts support[ed]" the charge at issue. *State v. Sena*, 2018-

---

1Citations to this Court's opinion in *Sena* are included solely for the purpose of providing background information not present in the opinion of our Supreme Court.

NMCA-037, ¶ 45, 419 P.3d 1240, *aff'd in part, rev'd in part, and remanded*, 2020-NMSC-011, ¶¶ 11, 41, 42, 57, 59. Indeed, in *Sena*, "[e]ven the . . . jury instruction . . . contained broad, boilerplate language straight from the statute, providing no insight into the [s]tate's theory of the case." *Id.* (citing *State v. Montoya*, 2011-NMCA-074, ¶ 43, 150 N.M. 415, 259 P.3d 820 for the proposition that prosecutors "can avoid double jeopardy violations by identifying specific, non[]unitary conduct in jury instructions"). Bearing this distinction in mind, we now conduct an analysis of each conviction that Defendant asserts is a violation of his protection against double jeopardy.

## A.      Aggravated Battery With a Deadly Weapon

{13}    Defendant first argues that his conviction for aggravated battery against Ms. Budak is subsumed by his armed robbery conviction. Pursuant to the statute, the district court instructed the jury that, to convict Defendant of aggravated battery with a deadly weapon, it must find, in relevant part, that

1.      [D]efendant touched or applied force to [Ms.] Budak by striking her in the head with a deadly weapon; [and]

2.      [D]efendant intended to injure [Ms.] Budak[.]

*See* § 30-3-5; UJI 14-322 NMRA.

{14}    Defendant contends that the force elements for both armed robbery and aggravated battery with a deadly weapon were satisfied when Defendant hit Ms. Budak on the head with a gun, and thus the conduct was unitary. The State counters that the force from the armed robbery was separate from the force for the aggravated battery with a deadly weapon, arguing that the door to the restaurant had been pushed open by Mr. Howell before Defendant struck Ms. Budak with a gun, making the robbery entirely independent of the battery. However, Ms. Budak testified that the force that allowed Defendant to "gain access" to the restaurant was Defendant hitting her in the head with a gun. During closing arguments, the State also relied on this use of force as a basis on which the jury could find that the force element for armed robbery was met. We therefore agree with Defendant that the force elements for both armed robbery and aggravated battery with a deadly weapon were satisfied simultaneously and proceed to analyze the punitive intent of our Legislature. *See State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747.

{15}    In *State v. Fuentes*, when considering whether our Legislature intended to punish armed robbery and aggravated battery with a deadly weapon separately, we held "that these two criminal statutes regulate distinct deviant social conducts and protect separate, societal interests" and thus perceived no violation of the protection against double jeopardy when defendants are convicted of both crimes. 1994-NMCA-158, ¶¶ 1, 16, 18, 119 N.M. 104, 888 P.2d 986. Recently, however, we have indicated that it is inappropriate to stand on *Fuentes* alone as the basis for outright rejection of a double jeopardy argument in light of our Supreme Court's adoption of the modified *Blockburger*

test that applies when evaluating the Legislature's punitive intent. *State v. Evensen*, No. 33,338, mem. op. ¶¶ 25, 28-29 (N.M. Ct. App. May 11, 2015) (non-precedential); *see also State v. Young*, No. 35,315, mem. op. ¶¶ 4-6 (N.M. Ct. App. Mar. 1, 2017) (non-precedential) (applying the modified *Blockburger* test where the defendant claimed his convictions for armed robbery and aggravated battery with a deadly weapon violated his protection against double jeopardy). Today, we formally recognize this principle.

**{16}** The modified *Blockburger* test applies in cases where the statutes behind the charged offenses "are vague and unspecific" or "written with many alternatives." *State v. Gutierrez*, 2011-NMSC-024, ¶ 48, 150 N.M. 232, 258 P.3d 1024 (internal quotation marks and citation omitted). It requires us to answer whether the legal theory advanced by the State at trial results in one offense subsuming the other. *See id.* ¶ 58; *Swick*, 2012-NMSC-018, ¶¶ 21, 24. More specifically, our analysis is guided by the State's theory of what conduct violated the statutes at issue. *See State v. Porter*, 2020-NMSC-020, ¶ 18, 476 P.3d 1201.

**{17}** With this framework in mind, we continue our analysis by looking to the elements of the two offenses to ascertain if the definition of one subsumes the definition of the other. *See State v. Montoya*, 2013-NMSC-020, ¶ 32, 306 P.3d 426. Having outlined the elements of armed robbery and aggravated battery with a deadly weapon above, it is apparent that the two statutes have distinct elements, including the intent necessary to effectuate each offense: "Robbery requires the specific intent to deprive the victim of his property; it is a crime primarily directed toward protection of property interests. Aggravated battery, on the other hand, requires the specific intent to injure the victim, which is not present in robbery." *Fuentes*, 1994-NMCA-158, ¶ 8 (emphasis omitted). Thus, one of these offenses is not subsumed by the other based on these definitions alone.

**{18}** We turn, then, to Defendant's contention that the State charged him with armed robbery with little specificity and provided many alternative bases on which the jury could find that the force element had been satisfied. We agree. As outlined above, the jury instruction for armed robbery permitted the jury to convict Defendant for armed robbery based on "force or violence or threatened force or violence" against either Ms. Budak or Ms. Gunn. *See State v. Armijo*, 1999-NMCA-087, ¶ 8, 127 N.M. 594, 985 P.2d 764 (stating that "jury instructions become the law of the case and, absent proof conforming to the instructions, the state could not prevail" (internal quotation marks and citation omitted)). Accordingly, we must appraise the State's theory of the case to determine whether the force for Defendant's armed robbery conviction was the same force for Defendant's aggravated battery with a deadly weapon conviction. We hold that it was.

**{19}** As outlined above, the State advanced a theory that Defendant used force from the outset of robbery. Specifically, the State argued that Defendant "got the money," i.e., the U.S. currency mentioned in the jury instruction for armed robbery, either by battering Ms. Budak with a gun upon arrival at the restaurant's door, or by threatening force or violence against Ms. Gunn once he entered the restaurant. While the State maintains

that it "did not cast . . . Defendant's crime of battery on [Ms. Budak] as part of the robbery itself[,]" this is simply contrary to the record. Indeed, at trial, the State explicitly told the jury during closing arguments that Defendant's threatening conduct toward Ms. Gunn or his battery on Ms. Budak would satisfy the "force" or "violence" or "threatened force or violence" needed to convict Defendant for armed robbery. Given that the jury was instructed that it could rely on the same conduct to satisfy the force elements of both armed robbery and aggravated battery with a deadly weapon, we hold that Defendant's conviction for aggravated battery with a deadly weapon, as the lesser offense, must be vacated. *See State v. Santillanes*, 2001-NMSC-018, ¶ 28, 130 N.M. 464, 27 P.3d 456 ("[D]ouble jeopardy requires that the lesser offense merge into the greater offense such that the conviction of the lesser offense, not merely the sentence, is vacated."). We look next to Defendant's conviction for aggravated assault with a deadly weapon.

## B.      Aggravated Assault With a Deadly Weapon

**{20}**    Defendant argues that his conviction for aggravated assault against Ms. Gunn is subsumed by his armed robbery conviction. Pursuant to the statute, the district court instructed the jury that to convict Defendant of aggravated assault with a deadly weapon, it must find, in relevant part, that

>      1.      [D]efendant pointed a handgun at [Ms.] Gunn and/or pressed the handgun against [Ms.] Gunn's throat;
>
>      2.      [D]efendant's conduct caused [Ms.] Gunn to believe [Defendant] was about to intrude on [Ms.] Gunn's bodily integrity or personal safety by touching or applying force to [Ms.] Gunn in a rude insolent or angry manner; [and]
>
>      3.      A reasonable person in the same circumstances as [Ms.] Gunn would have had the same belief[.]"

*See* § 30-3-2; UJI 14-305 NMRA.

**{21}**    Like his argument for aggravated battery with a deadly weapon, Defendant contends that the force elements for both armed robbery and aggravated assault were simultaneously satisfied when Defendant pointed a gun at Ms. Gunn. The State argues that Defendant committed multiple assaults against Ms. Gunn, some of which were completed before the armed robbery and any one of which the jury could have relied on to convict Defendant. We reject the State's argument as contrary to the *Foster* presumption. The jury instruction for armed robbery allowed the jury to rely on force against Ms. Budak *or* Ms. Gunn, and the State relied on the use of force against Ms. Budak as a basis on which the jury could find that the force element for armed robbery was met. *Foster* requires us to assume that, for purposes of our analysis of these convictions, the jury relied on the use of force against Ms. Gunn for the armed robbery conviction because the jury instruction was framed in the alternative to allow the jury to

convict Defendant of armed robbery against either Ms. Budak or Ms. Gunn. *See Sena*, 2020-NMSC-011, ¶¶ 46-47. Thus, the use of force against Ms. Gunn for the aggravated assault with a deadly weapon conviction is the same use of force as that relied upon for the armed robbery conviction. We therefore conclude that Defendant's conduct was unitary and move on to analyze whether the offenses may be punished separately. *See Swick*, 2012-NMSC-018, ¶ 11.

**{22}** Standing on our holding in *Fuentes*, we have observed that "[t]he armed robbery statute is directed primarily toward protecting against the loss of property" while "[t]he aggravated assault statute is directed toward preserving the integrity of a person's body against the threat of injury or . . . actual serious bodily injury." *State v. Armijo*, 2005-NMCA-010, ¶ 30, 136 N.M. 723, 104 P.3d 1114. Thus, we reasoned that, under a traditional *Blockburger* analysis, our Legislature intended to create two offenses that provide for separate punishments. *Id.* ¶¶ 21, 30. Defendant urges us to adopt the modified *Blockburger* test here as well. We oblige because, as outlined above, the jury instruction for armed robbery permitted the jury to convict Defendant for armed robbery based on "force or violence or threatened force or violence" against either Ms. Budak or Ms. Gunn and therefore provided multiple alternatives and little specificity. *See Gutierrez*, 2011-NMSC-024, ¶ 48.

**{23}** Again, we begin our analysis by looking to the elements of the two offenses to ascertain if the definition of one subsumes the definition of the other. *See Montoya*, 2013-NMSC-020, ¶ 32. Our outline above of the elements necessary for both offenses reveals that the definition of armed robbery subsumes the definition of aggravated assault with a deadly weapon. Indeed, the actions needed to effectuate aggravated assault with a deadly weapon, as charged in this case, did not require anything more of Defendant than the actions necessary to effectuate armed robbery. Our inquiry here is therefore at an end, because where "one statute is subsumed within the other, . . . the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *State v. Luna*, 2018-NMCA-025, ¶ 11, 458 P.3d 457 (internal quotation marks and citation omitted). Accordingly, Defendant's conviction for aggravated assault of Ms. Gunn with a deadly weapon must be vacated. *See Santillanes*, 2001-NMSC-018, ¶ 28. Finally, we turn to Defendant's conviction for false imprisonment.

## C.    False Imprisonment

**{24}** Defendant argues that his conviction for false imprisonment of Ms. Gunn is subsumed by his convictions for armed robbery and aggravated assault of Ms. Gunn with a deadly weapon. Because we have already concluded that Defendant's conviction for aggravated assault with a deadly weapon must be vacated, we need only analyze whether his conviction for armed robbery subsumes his conviction for false imprisonment. At the outset, we note that the State charged Defendant with kidnapping, but offered false imprisonment as a lesser included offense for which the jury could convict Defendant. *See State v. Sotelo*, 2013-NMCA-028, ¶ 12, 296 P.3d 1232 ("[F]alse imprisonment is a subset of kidnapping.").

**{25}**   Pursuant to the statute, the district court instructed the jury that to convict Defendant of kidnapping, it must find, in relevant part, that

> 1.      [D]efendant took or restrained or confined or transported [Ms.] Gunn by force or intimidation by pointing firearms at her and requiring her to do or not to do certain things;
>
> 2.      [D]efendant intended to inflict physical injury on [Ms.] Gunn[] and/or to keep her from looking at . . . [D]efendant's face, against her will for the purpose of preventing an identification; [and]
>
> 3.      The taking or restraint or confinement or transportation of [Ms.] Gunn was not slight, inconsequential, or merely identical to the commission of another crime, armed robbery[.]

*See* NMSA 1978, § 30-4-1 (2003); UJI 14-403A NMRA. Likewise, the district court instructed the jury that, to convict Defendant of false imprisonment, it must find, in relevant part, that

> 1.      [D]efendant restrained or confined [Ms.] Gunn against her will; [and]
>
> 2.      [D]efendant knew that he had no authority to restrain or confine [Ms.] Gunn[.]

*See* § 30-4-3; UJI 14-401 NMRA.

**{26}**   As with the other convictions for which Defendant complains of violations of his protection against double jeopardy, Defendant contends that because the State argued before the jury that it could rely on pointing a gun at Ms. Gunn or pressing a gun to her throat as the basis for the "force or violence or threatened force or violence" necessary for armed robbery and the "force or intimidation" necessary for kidnapping, we must view his conduct as unitary. The State made clear at trial that the conduct necessary to effectuate kidnapping also reflects its theory as to false imprisonment. Again, Defendant urges us to adopt the modified *Blockburger* test for the issues here. For the reasons that follow, we accept Defendant's position.

**{27}**   The State specifically argued during closing argument that the "force or violence or threatened force or violence" necessary for armed robbery functionally satisfied the "restraint or confinement by force" necessary for kidnapping. While the jury rejected some elements of kidnapping as it proceeded to consider false imprisonment as a lesser included offense, it still found that Defendant "restrained or confined" Ms. Gunn. In its briefing, the State lists "factors [of] distinctness" to separate Defendant's conduct in such a way as to ascribe different conduct to each of Defendant's convictions. The flaw in the State's position here, as is true for each of Defendant's challenged convictions, is that it now looks to the record in an effort to sort out Defendant's conduct with distinction and tie it to a specific charge, when below it encouraged the jury to use

the same conduct to convict Defendant of nearly every charge. The State cannot wait for an appeal to adequately separate Defendant's conduct to support each conviction; rather, the State must do this work below to ensure that distinct conduct supports each charge tried. For these reasons, Defendant's conduct constituting "force or violence or threatened force or violence" for armed robbery and "restraint or confinement" for false imprisonment in this case is unitary, and we proceed to determine whether multiple punishments were intended. *See Swick*, 2012-NMSC-018, ¶ 11.

{28}    We first analyze whether the elements of false imprisonment are subsumed by the elements of armed robbery. *See Montoya*, 2013-NMSC-020, ¶ 32. Our review of the relevant elements for these offenses outlined above reveal that they are. Indeed, to complete false imprisonment here, nothing more was required of Defendant than was required for his commission of armed robbery, except for Defendant's knowledge "that he had no authority to restrain or confine [Ms.] Gunn[.]" However, "when a defendant's underlying acts are unlawful, it may be inferred that the defendant knows, too, that he has no lawful authority to restrain the victim in the commission of those unlawful acts" and the knowledge element is immaterial to our analysis here. *State v. Barrera*, 2002-NMCA-098, ¶ 11, 132 N.M. 707, 54 P.3d 548. Because Defendant cannot be punished twice for this conduct, *see Luna*, 2018-NMCA-025, ¶ 11, his conviction for false imprisonment must be vacated, *see Santillanes*, 2001-NMSC-018, ¶ 28, and we proceed no further.

## II.    Ineffective Assistance of Counsel Claims

{29}    Defendant argues that he received ineffective assistance from his trial counsel. Specially, Defendant contends that because his trial counsel did not move to sever the charge of felon in possession of a firearm from his remaining charges, and that because his trial counsel did not cross-examine Mr. Howell concerning Mr. Howell's criminal history, he did not receive constitutionally adequate representation. Defendant has failed to establish a prima facie case of ineffective assistance of counsel as to both claims.

{30}    Criminal defendants possess a constitutional right to "reasonably effective assistance of counsel." *State v. Tafoya*, 2012-NMSC-030, ¶ 59, 285 P.3d 604 (internal quotation marks and citation omitted); *see also* U.S. Const. amend. VI; N.M. Const. art. II, § 14. "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44. Claims of ineffective assistance of counsel are assessed using the test articulated by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Dylan J.*, 2009-NMCA-027, ¶ 36. To make a prima facie case of ineffective assistance of counsel under this test, Defendant bears the burden of demonstrating "attorney error and prejudice." *See State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068. New Mexico's appellate courts generally prefer that criminal defendants bring claims of ineffective assistance of counsel in habeas corpus proceedings, rather than on direct appeal. *See Bernal*, 2006-NMSC-050, ¶ 33; *State v. Barela*, 2018-NMCA-067, ¶ 17, 429 P.3d 961. For a claim of ineffective assistance of counsel raised on direct appeal, "we evaluate the facts that are

part of the record." *Crocco*, 2014-NMSC-016, ¶ 14 (internal quotation marks and citation omitted).

## A.    Severance of the Charge of Felon in Possession of a Firearm

**{31}**    Based on the record before us, we are unable to determine whether the absence of a motion to sever Defendant's charge of felon in possession of a firearm from his remaining charges "represent[s a] potentially serious failure[] on the part of trial counsel" or sound trial tactic or strategy, "which may demand a full-bodied inquiry at an evidentiary hearing on habeas corpus." *Bernal*, 2006-NMSC-050, ¶ 35; *see also Crocco*, 2014-NMSC-016, ¶ 15 ("Without an adequate record, an appellate court cannot determine that trial counsel provided constitutionally ineffective assistance."); *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057 (recognizing that only a " 'sound' trial tactic or strategy withstands review"). We are therefore unable to conclude that Defendant has demonstrated a prima facie case for ineffective assistance of counsel as to the question of severance. We note, of course, that Defendant may choose to pursue this particular claim in a habeas corpus petition, at which time a hearing may be held to consider evidence concerning trial counsel's performance and any resulting prejudice. *See Bernal*, 2006-NMSC-050, ¶ 35.

## B.    Cross-Examination of Mr. Howell

**{32}**    We next turn to Defendant's second argument, i.e., that his trial counsel was ineffective for failing to cross-examine Mr. Howell concerning his criminal history. Specifically, Defendant argues that his trial counsel should have inquired into Mr. Howell's criminal history subsequent to the night of the restaurant robbery because Mr. Howell testified on direct examination that, at the time of the robbery, he had no criminal history.

**{33}**    We begin with the principle that our analysis here is not an occasion for retrospection. *See Lytle v. Jordan*, 2001-NMSC-016, ¶ 50, 130 N.M. 198, 22 P.3d 666. Defendant's argument relies solely on the proposition that his trial counsel should have done more to attack Mr. Howell's credibility, while conceding that his trial counsel did indeed cross-examine Mr. Howell on the truthfulness of his trial testimony and his answers to questions from law enforcement during its investigation, and on the terms of his plea agreement as they related to his testimony against Defendant. While, in hindsight, it may have been prudent to elicit testimony on Mr. Howell's criminal history, if admissible, under the specific facts of this case, where trial counsel conducted an extensive cross-examination of Mr. Howell, we cannot conclude that trial counsel's performance here was deficient. *See State v. Martinez*, 2007-NMCA-160, ¶ 26, 143 N.M. 96, 173 P.3d 18 (noting that a "questionable" approach to representation "does not necessarily amount to ineffective assistance"); *see also Lytle*, 2001-NMSC-016, ¶ 26 ("Judicial scrutiny of counsel's performance must be highly deferential." (internal quotation marks and citation omitted)).

**{34}** As well, Defendant's argument is premised largely on speculation. Specifically, Defendant states that evidence of Mr. Howell's criminal conduct subsequent to the night of the restaurant robbery would have been admitted had trial counsel pursued such questioning on cross-examination. However, the admission of evidence and the limits on cross-examination fall within the district court's sound discretion. *See State v. Bent*, 2013-NMCA-108, ¶ 13, 328 P.3d 677 (recognizing that "the district court has broad discretion over cross-examination"); *State v. Landgraf*, 1996-NMCA-024, ¶ 19, 121 N.M. 445, 913 P.2d 252 (recognizing the district court's "broad discretion to determine the relevance and probative value of offered testimony"); *State v. Ramming*, 1987-NMCA-067, ¶ 33, 106 N.M. 42, 738 P.2d 914 ("Admission of evidence is discretionary with the [district] court."). Even if any evidence concerning Mr. Howell's criminal history would have been admitted by the district court, in particular, the nature of the convictions, the impact such admission would have had on the jury is also entirely speculative. *See State v. Elliott*, 1977-NMSC-002, ¶ 10, 89 N.M. 756, 557 P.2d 1105 (noting that appellate courts "will not speculate about hypothetical evidence that might have been developed at the defendant's trial"). We therefore decline to assume that the district court would have unequivocally admitted evidence of Mr. Howell's criminal conduct. *See State v. Ortega*, 2014-NMSC-017, ¶¶ 57, 59, 327 P.3d 1076 (rejecting ineffective assistance of counsel claims with "purely speculative" arguments unsupported by the record).

**{35}** Thus, we cannot conclude that Defendant has demonstrated that his trial counsel erred in his performance by failing to cross-examine Mr. Howell concerning Mr. Howell's criminal history. We need not proceed to analyze prejudice. *See Garcia*, 2011-NMSC-003, ¶ 34 (noting that the question of prejudice in an ineffective assistance of counsel claim need not be reached if the defendant does not demonstrate deficiency in trial counsel's performance).

**{36}** For all these reasons, we hold that Defendant has not made a prima facie case of ineffective assistance of counsel on direct appeal, and we therefore decline to remand the case to the district court for a hearing on the same. *See State v. Swavola*, 1992-NMCA-089, ¶ 3, 114 N.M. 472, 840 P.2d 1238 (restricting remand "to those cases in which the record on appeal establishes a prima facie case of ineffective assistance"). Again, our holding herein should not be construed to prejudice Defendant's ability to pursue a similar claim in a habeas corpus proceeding.

## CONCLUSION

**{37}** Defendant's convictions for aggravated battery with a deadly weapon, one count of aggravated assault with a deadly weapon, and false imprisonment violate principles of double jeopardy and are therefore reversed. We reject Defendant's claims that the record on direct appeal establishes a prima facie case of ineffective assistance of counsel. We remand this case to the district court with instructions to amend the judgment and sentence in accordance with this opinion.

**{38}   IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**ZACHARY A. IVES, Judge**