This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40094**

**STATE OF NEW MEXICO,**

> Plaintiff-Appellee,

v.

**DANIEL VASQUEZ,**

> Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Christopher Perez, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Emily Miller, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Defendant was convicted by a jury of first-degree kidnapping, contrary to NMSA 1978, Section 30-4-1 (2003); attempt to commit a felony, to wit: first-degree murder, contrary to NMSA 1978, Section 30-28-1 (1963, amended 2024) and NMSA 1978, Section 30-2-1(A)(1) (1994); and aggravated battery against a household member,

contrary to NMSA 1978, Section 30-3-16(B) (2018).[1] Defendant appeals, arguing that his convictions subject him to multiple punishments in violation of his right to be free from double jeopardy. Concluding that Defendant's convictions for attempted first-degree murder and aggravated battery against a household member violate his double jeopardy rights, we reverse and remand to the district court with directions to vacate those convictions and resentence Defendant accordingly. We affirm the remainder of Defendant's convictions.

**BACKGROUND**

**{2}** At the time of the events giving rise to his convictions, Christmas Day 2018, Defendant and Victim had dated for approximately four-and-one-half to five months. That day, Defendant was driving Victim to her mother's house in Placitas, New Mexico because Victim's children were there. However, they never reached Victim's mother's home. Instead, Defendant verbally abused Victim, threatened Victim with physical violence including death threats, and inflicted physical violence on Victim, including elbowing her in the ribs, punching Victim in the face, stabbing Victim in the chest with a knife, pulling Victim's hair, and slamming Victim's head into the vehicle's gear shift. Defendant did all of these things while also refusing Victim's requests to be let out of the vehicle. Defendant went so far as to thwart Victim's attempt to escape. Eventually, Victim was able to escape by jumping from the moving vehicle and made it to safety with the help of a passing driver. We reserve further factual discussion as necessary for the analysis that follows.

**DISCUSSION**

**{3}** In this appeal, Defendant advances two separate double jeopardy arguments: (1) his convictions for attempted murder and aggravated battery against a household member were subsumed within his conviction for kidnapping; and (2) his convictions for attempted murder and aggravated battery against a household member encompassed a single course of assaultive behavior and therefore should not be punished separately. Because we agree that Defendant's convictions for attempted first-degree murder and aggravated battery against a household member violate Defendant's right to be free from double jeopardy, we need not reach his second argument.

**I.      Defendant's Convictions for First-Degree Kidnapping, Attempted First-Degree Murder and Aggravated Battery Against a Household Member Violate Double Jeopardy**

**{4}** "Double jeopardy is a constitutional question of law which we review de novo." *State v. Lorenzo*, 2024-NMSC-003, ¶ 5, 545 P.3d 1156 (internal quotation marks and citation omitted); *see* U.S. Const. amend. V ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."); N.M. Const. art. II, § 15 ("[N]or shall any person be twice put in jeopardy for the same offense."). "When a single course

---

[1]The jury also convicted Defendant of interference with communications, contrary to NMSA 1978, Section 30-12-1 (1979). He has not challenged that conviction in this appeal.

of conduct results in multiple charges under separate criminal statutes, one of the charges may be barred by double jeopardy." *Lorenzo*, 2024-NMSC-003, ¶ 5. "We term this a double-description double jeopardy violation." *Id.* "In reviewing a double-description challenge, we first determine whether the conduct underlying the two offenses is unitary, i.e., whether the same conduct violates both statutes." *Id.* (alteration, internal quotation marks, and citation omitted). "If the conduct is not unitary, the analysis is complete because the acts are discrete and no violation of the defendant's right against double jeopardy is possible." *Id.* "If the conduct is unitary, we must next determine whether the Legislature intended for the unitary conduct to be punished as separate offenses." *Id.* "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishments in the same trial." *Id.* (internal quotation marks and citation omitted).

**{5}**    "The unitary conduct analysis turns on whether the acts underlying the two offenses are separated by sufficient indicia of distinctness." *Id.* ¶ 6 (internal quotation marks and citation omitted). "In determining sufficiency, we look to the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury." *Id.* (alteration, omission, internal quotation marks, and citation omitted). "When examining the factual record, courts consider such factors as whether the acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act." *Id.* (alteration, internal quotation marks, and citation omitted). "Looking at the totality of the circumstances, if it reasonably can be said that the conduct is unitary, then we must conclude that the conduct was unitary." *Id.* (internal quotation marks and citation omitted).

**{6}**    "When conduct is unitary, we must next decide whether the Legislature intended to permit multiple punishments for the charged crimes." *Id.* ¶ 13 (internal quotation marks and citation omitted). "In analyzing legislative intent, we first look to the language of the statutes to determine whether the Legislature explicitly authorized multiple punishments for unitary conduct." *Id.* (alteration, internal quotation marks, and citation omitted). When "the statutes do not explicitly authorize multiple punishments, we must apply other canons of construction to determine legislative intent." *State v. Begaye*, 2023-NMSC-015, ¶ 21, 533 P.3d 1057.

**{7}**    In circumstances such as these, we apply the test set out in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The *Blockburger* test requires this court to consider the elements of the charges under review "to determine whether each [charge] requires proof of a fact that the other does not." *State v. Branch*, 2018-NMCA-031, ¶ 24, 417 P.3d 1141. "If all elements of one [charge] are subsumed within the other, then the analysis ends and the [charges] are considered the same for double jeopardy purposes." *State v. Elliott*, ___-NMCA-___, ¶ 36, ___ P.3d ___ (A-1-CA-40436, Nov. 19, 2024) (internal quotation marks and citation omitted). This test is "sometimes referred to as the 'strict elements' test." *State v. Porter*, 2020-NMSC-020, ¶ 7, 476 P.3d 1201 (quoting *State v. Montoya*, 2013-NMSC-020, ¶ 31, 306 P.3d 426).

**{8}** However, "[w]hen dealing with statutes that are vague and unspecific or written with many alternatives, we apply a modified version of the *Blockburger* test." *State v. Arguello*, 2024-NMCA-074, ¶ 29, 557 P.3d 1018 (internal quotation marks and citation omitted), *cert. denied*, 2024-NMCERT-009 (S-1-SC-40560); *see State v. Gutierrez*, 2011-NMSC-024, ¶ 48, 150 N.M. 232, 258 P.3d 1024 (adopting a modified version of the *Blockburger* test for statutes that are vague and unspecific or may be proved in the alternative). "Under the modified *Blockburger* analysis, we no longer apply a strict elements test in the abstract; rather, we look to the state's trial theory to identify the specific criminal cause of action for which the defendant was convicted, filling in the case-specific meaning of generic terms in the statute when necessary." *State v. Serrato*, 2021-NMCA-027, ¶ 16, 493 P.3d 383 (internal quotation marks and citation omitted). "[T]he application of *Blockburger* should not be so mechanical that it is enough for two statutes to have different elements." *Id.* (internal quotation marks and citation omitted). As a result, "instead of looking at the statute in the abstract, we look at the legal theory of the offense that is charged when comparing the elements of the statute. *Id.* (internal quotation marks and citation omitted). "We do so independent of the particular facts of the case by examining the charging documents and the jury instructions given in the case." *Branch*, 2018-NMCA-031, ¶ 25 (omission, internal quotation marks, and citation omitted). "If the state's legal theory cannot be ascertained using the charging documents and jury instructions, we also review testimony, opening [statements], and closing arguments to establish whether the same evidence supported a defendant's convictions under both statutes." *Begaye*, 2023-NMSC-015, ¶ 24 (internal quotation marks and citation omitted). "We examine each offense keeping in mind that determining whether one offense subsumes the other *depends entirely on the* [*s*]*tate's theory of the case.*" *Id.* (emphasis added) (alteration, internal quotation marks, and citation omitted).

**{9}** "If the statutes survive *Blockburger*, we examine other indicia of legislative intent. We look to the language, history, and subject of the statutes, and we must identify the particular evil sought to be addressed by each offense," bearing in mind that "[s]tatutes directed toward protecting different social norms and achieving different policies can be viewed as separate and amenable to multiple punishments." *Branch*, 2018-NMCA-031, ¶ 26 (internal quotation marks and citation omitted). With these principles in mind, we turn to the case before us.

## A. Unitary Conduct

**{10}** We begin by determining whether the conduct supporting Defendant's convictions for first-degree kidnapping, attempted first-degree murder, and aggravated battery against a household member was unitary. In order to prove first-degree kidnapping, the jury instructions required the State, in addition to having to prove Victim's forcible restraint, and as particularly relevant here, to prove that Defendant (a) did not free Victim in a safe place; or (b) inflicted a physical injury on Victim. *See* § 30-4-1(B); UJI 14-403 NMRA. Based on the evidence introduced by the State at trial, the jury could have convicted Defendant under either alternative. However, if the jury relied on the second alternative, it could have double jeopardy implications as we discuss below.

Here, the record does not reveal which alternative the jury relied on when convicting Defendant of first-degree kidnapping as it returned a general verdict. Therefore, we must presume that the jury relied on the second alternative—that Victim was restrained in conjunction with the infliction of a physical injury. *See State v. Foster*, 1999-NMSC-007, ¶ 28, 126 N.M. 646, 974 P.2d 140 (stating "we must presume that a conviction under a general verdict requires reversal if the jury is instructed on an alternative basis for the conviction that would result in double jeopardy, and the record does not disclose whether the jury relied on this legally inadequate alternative"), *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683.

**{11}**　Our Supreme Court has counseled that "*Foster* does not require a further presumption that the same conduct was then relied upon by the jury in convicting [the d]efendant of each crime." *State v. Sena*, 2020-NMSC-011, ¶ 54, 470 P.3d 227. In fact, "the *Foster* presumption is rebutted by evidence that each crime was completed before the other crime occurred." *Id.* Here, the State argues that the *Foster* presumption has been rebutted. We are not persuaded because as Defendant notes, "[T]he State's presentation on appeal does not match its presentation at trial." *See Lorenzo*, 2024-NMSC-003, ¶ 11. Instead, we conclude that "according to the State's theory of the case, articulated to the jury during closing arguments and presented in the jury instructions, there can be no neat delineation between Defendant's actions." *See State v. Reed*, 2022-NMCA-025, ¶ 12, 510 P.3d 1261; *see also State v. Montoya*, 2011-NMCA-074, ¶ 43, 150 N.M. 415, 259 P.3d 820 (explaining that the state can avoid double jeopardy violations by identifying specific, nonunitary conduct in jury instructions). For that reason, "the completed offense principle does not control." *Reed*, 2022-NMCA-025, ¶ 12.

**{12}**　We observed in *Reed* that "[t]he state's conduct at the trial of the defendant in *Sena* stands in marked contrast to its conduct at [the d]efendant's trial in th[at] case." *Id.* The same is true here. In *Sena*, "the [s]tate never communicated any theory to the jury nor did it argue any specific facts to support" the relevant charge. *State v. Sena*, 2018-NMCA-037, ¶ 45, 419 P.3d 1240, *aff'd in part*, *rev'd in part*, *and remanded*, 2020-NMSC-011, ¶¶ 11, 41, 42, 57, 59, 470 P.3d 227. Here, the State clearly relied on the conduct underlying Defendant's charges for attempted first-degree murder—i.e., Defendant stabbing Victim in the chest—and aggravated battery against a household member—i.e., Defendant punching Victim causing injuries to Victim's eye, cheek, and lip—when asking the jury to convict Defendant of first-degree kidnapping. "[H]ad the State opted for a different presentation at trial, it is possible that the jury could have decided that different uses of force satisfied the elements of each crime." *See Lorenzo*, 2024-NMSC-003, ¶ 11. However, based on the State's chosen trial presentation, coupled with the general verdict form, we have no basis to conclude that the conduct underlying Defendant's relevant convictions was not unitary. *See id.* (explaining that the state on appeal cannot "argue in the abstract about what it could have asked the jury to decide"). Accordingly, we proceed to determine whether the Legislature intended multiple punishments for these crimes in these circumstances.

**B.    Legislative Intent**

**{13}**    Because our review of the statutes at issue reveals that they can be violated in alternative ways, we employ the modified *Blockburger* test to assist us in discerning whether the Legislature intended multiple punishments for conviction under these statutes. Pursuant to the modified *Blockburger* test, we attempt to discern the State's legal theory by reviewing the statutory language, charging documents, and jury instructions.

**{14}**    In this case because we cannot ascertain the State's legal theory through a review of the statutory language, charging instructions, or jury instructions alone, we move directly to review of the testimony, opening statements, and closing arguments to determine whether the same evidence supported Defendant's convictions for first-degree kidnapping, attempted first-degree murder, and aggravated battery against a household member. For the reasons discussed above in our unitary conduct analysis, we similarly conclude here that the State relied on the same evidence to support the conviction of Defendant for all three charges. Nevertheless, we briefly set forth in more detail relevant portions of the State's arguments at trial to demonstrate the considerable overlap.

**{15}**    The overlap is made apparent from the following requests the State made of the jury during its closing argument: (1) when asking the jury to convict Defendant of first-degree kidnapping, the State specifically referenced Defendant stabbing Victim in the chest, punching Victim in the face, and the resulting injuries to her chest and face; (2) when asking the jury to convict Defendant of attempted first-degree murder, the State again specifically referenced Defendant stabbing Victim (significantly for these charges, the evidence presented at trial was that Defendant stabbed Victim only once); and (3) when asking the jury to convict Defendant of aggravated battery against a household member, the State again specifically referenced the punches Defendant inflicted on Victim that resulted in injuries to her face. Clearly, therefore, under the State's theory, for the jury to convict Defendant of first-degree kidnapping, the jury must have necessarily found that Defendant stabbed Victim in the chest—the conduct underlying the attempted first-degree murder charge—or Defendant punched Victim in the face thereby causing injuries to her face—the conduct underlying the aggravated battery against a household member charge.

**{16}**    Given the State's theory as it was argued during its closing argument, we conclude that Defendant's conviction for attempted first-degree murder was subsumed by Defendant's conviction for first-degree kidnapping. We similarly conclude that Defendant's conviction for aggravated battery against a household member is subsumed by Defendant's conviction for first-degree kidnapping. *See Begaye*, 2023-NMSC-015, ¶ 24 (stating that "[w]e examine each offense keeping in mind that determining whether one offense subsumes the other *depends entirely* on the [s]tate's theory of the case" (emphasis added) (alteration, internal quotation marks, and citation omitted)). Accordingly, we conclude, based on the modified *Blockburger* test that the Legislature did not intend for a defendant to receive multiple punishments for conviction

of these crimes under the circumstances present in this case. Thus, Defendant's convictions for first-degree kidnapping, attempted first-degree murder, and aggravated battery against a household member violate Defendant's right to be free from double jeopardy.

**{17}** As a result, we must vacate Defendant's convictions for attempted first-degree murder and aggravated battery against a household member. We do so because those crimes carry the shorter sentence compared to first-degree kidnapping and attempted first-degree murder and compared to first-degree kidnapping and aggravated battery against a household member. *See, e.g.*, *Montoya*, 2013-NMSC-020, ¶ 55 ("[W]here one of two otherwise valid convictions must be vacated to avoid violation of double jeopardy protections, we must vacate the conviction carrying the shorter sentence.").

**{18}** As charged in this case, first-degree kidnapping is a first-degree felony, *see* § 30-4-1(B) (defining the kidnapping crime here as a first-degree felony), that has a basic sentence of eighteen years imprisonment, *see* NMSA 1978, § 31-18-15(A)(3) (2016, amended 2024) (stating the basic sentence for a first-degree felony is eighteen years imprisonment); attempt to commit a felony, to wit: first-degree murder is a second-degree felony, *see* § 30-28-1(A) (1963) (defining the attempted crime here as a second-degree felony), that has a basic sentence of nine years imprisonment, *see* § 31-18-15(A)(7) (2016) (stating that the basic sentence for a second-degree felony is nine years imprisonment); and aggravated battery against a household member is a misdemeanor, *see* § 30-3-16(B) (defining the battery crime here as a misdemeanor), that has a maximum jail sentence of less than one year, *see* NMSA 1978, § 31-19-1(A) (1984) (limiting a jail sentence for a misdemeanor to "a definite term less than one year"). Therefore, pursuant to *Montoya*, 2013-NMSC-020, ¶ 55, we remand this case to the district court with directions to vacate Defendant's convictions for attempt to commit a felony, to wit: first-degree murder and aggravated battery against a household member, and that the district court thereafter resentence Defendant.

**CONCLUSION**

**{19}** For the reasons set forth above, we reverse and remand to the district court for further proceedings consistent with this opinion.

**{20}  IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**