The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: January 16, 2024

**NO. S-1-SC-39355**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**RAMON LORENZO,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Amanda Sanchez Villalobos, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Mark A. Peralta-Silva, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Respondent

**OPINION**

**THOMSON, Justice.**

{1}    We consider whether convictions of both the armed robbery of a diner and the aggravated battery of the diner's owner violate a defendant's right to be free from double jeopardy. We conclude that the conduct underlying both charges was unitary and that the State used evidence of the same force—a shooting which occurred during the robbery—to prove both convictions. Because the Legislature did not intend to allow multiple punishments for the same conduct, we hold that the convictions violate double jeopardy.

**I.    BACKGROUND**

{2}    On March 23, 2013, in Milan, New Mexico, there was a knock on the back door of the WOW Diner shortly after closing time. The owner, Richard Rivard (Victim), answered the door and was confronted by two former employees, Ramon Lorenzo (Defendant) and Leo Galindo, both holding guns. Victim tried to close the door, but the intruders overpowered him, pushing him back about ten feet. Defendant pointed a gun between Victim's eyes and said, "Where's the money?" Looking down the gun's barrel, Victim saw the hammer cocked back with Defendant's finger on the trigger. Victim "grabbed the gun, pulled [his] head back [, but] the gun went off," shooting him in the face. He fell to the ground. Defendant and Galindo demanded to

know where they would find the money as they searched the nearby office. They fled with about $1,800. Victim survived the shooting.

{3} A grand jury indicted Defendant on charges of armed robbery, conspiracy to commit armed robbery, aggravated burglary, conspiracy to commit aggravated burglary, aggravated battery by a deadly weapon, conspiracy to commit aggravated battery by a deadly weapon, tampering with evidence, and conspiracy to commit tampering with evidence. A felony failure to appear (FTA) charge was added when Defendant did not show up to his first trial date. A jury convicted Defendant of all counts except tampering with evidence and conspiracy to commit tampering with evidence, resulting in a sentence of twenty-six and one-half years.

{4} Defendant appealed, raising seven issues. *State v. Lorenzo*, A-1-CA-36648, mem. op. ¶ 2 (N.M. Ct. App. Mar. 24, 2022) (nonprecedential). The Court of Appeals rejected six of Defendant's arguments, but reversed and remanded to the district court to vacate two of the conspiracy convictions on double jeopardy grounds. *Id.* Defendant appealed to this Court, asserting for the first time that his convictions of aggravated battery and armed robbery violate his right to be free from

double jeopardy.[1] It is troubling to this Court that this second double jeopardy claim was not recognized until the petition for writ of certiorari.[2] Fortunately for Defendant, double jeopardy is not waivable and may be raised at any stage of a criminal case, including after judgment. *State v. Martinez*, 2007-NMCA-160, ¶ 5, 143 N.M. 96, 173 P.3d 18.

## II. DOUBLE JEOPARDY PROHIBITS MULTIPLE PUNISHMENT IN THIS CASE

{5} Double jeopardy "is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747; U.S. Const. amend. V ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."); N.M. Const. art. II, § 15 ("[N]or shall any person be twice put in

---

[1]Defendant raised, and we granted certiorari on, seven issues: (1) ineffective assistance of counsel resulting from the State's use of trial counsel's statements at the first trial date for which Defendant failed to appear as evidence of his FTA charge, (2) improper joinder and failure to sever the FTA charge from the initial charges, (3) speedy trial, (4) questioning of a witness about her medicinal marijuana use, (5) sufficiency of the evidence of FTA, (6) implied juror bias, and (7) double jeopardy for the armed robbery and aggravated battery with a deadly weapon convictions. We quash the first six issues as improvidently granted and address only the double jeopardy issue.

[2]The double jeopardy issue now presented is different from the one considered by the Court of Appeals and is raised for the first time here. *Lorenzo*, A-1-CA-36648, mem. op. ¶ 44 ("remand[ing] to the district court to vacate Defendant's conviction for fourth degree conspiracy to commit aggravated battery and one of his convictions for third degree conspiracy").

jeopardy for the same offense."). When a single course of conduct results in multiple charges under separate criminal statutes, one of the charges may be barred by double jeopardy. *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. We term this a double-description double jeopardy violation. *Id.* In reviewing a double-description challenge, we first determine "whether the conduct underlying the [two] offenses is unitary, i.e. whether the same conduct violates both statutes." *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. If the conduct is not unitary, the analysis is complete because the acts are discrete and no violation of the defendant's right against double jeopardy is possible. *Id.* ¶ 26. If the conduct is unitary, we must next determine whether the Legislature intended for the unitary conduct to be punished as separate offenses. *Id.* ¶ 25. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishments in the same trial." *Id.*

**A.    The Conduct Underlying Both Charges Was Unitary**

{6}    The unitary conduct analysis turns on whether the acts underlying the two offenses are separated by "sufficient indicia of distinctness."[3] *Id.* ¶ 26. In

---

[3]The Court of Appeals, in its double jeopardy analysis of the conspiracy convictions, assumed without discussing that the acts were unitary. *Lorenzo*, A-1-CA-36648, mem. op. ¶¶ 41-44. We complete the analysis here.

4

determining sufficiency, "we . . . look[] to the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury." *State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227. When examining the factual record, courts "consider such factors as whether [the] acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104. Looking at the totality of the circumstances, "if it reasonably can be said that the conduct is unitary, then we must conclude that the conduct was unitary." *State v. Porter*, 2020-NMSC-020, ¶ 12, 476 P.3d 1201 (text only)[4] (quoting *Swafford*, 1991-NMSC-043, ¶ 28).

{7} Here, the acts were close together in time and space. The entire episode, from the time Victim opened the door to the time Defendant and Galindo left, was described by Victim as "seven or eight minutes tops." The altercation was also contained spatially, taking place in the kitchen area of the restaurant.

{8} The course of conduct underlying both offenses was also similar. *Franco*, 2005-NMSC-013, ¶ 7 ("The proper analytical framework is whether the facts

---

[4]"(Text only)" indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

5

presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." (internal quotation marks and citation omitted)). Each conviction was based on Defendant's use of the gun. First, the gun was the means used to gain entry to the diner and rob Victim. Second, the gun was the weapon that assaulted Victim. Further, the acts were not interrupted by an intervening event.

{9}      The State argues that Defendant's conduct was nonunitary because "the force necessary to accomplish the robbery had already been threatened well before the shot was fired." The State's view of the conduct is that Defendant's act of displaying the gun satisfied the threatened force element of armed robbery. Therefore, the gunshot after the struggle was a different use of force that satisfied the aggravated battery. However, there are two distinct issues with the State's argument.

{10}      First, the armed robbery was not complete with the threatened use of force. The commission of the armed robbery began when Defendant and Galindo displayed their guns and forcefully entered the diner. The robbery was not complete until they took possession of the money. *See* NMSA 1978, § 30-16-2 (1973) ("Robbery consists of the *theft* of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence." (emphasis added)). The events between the initiation and completion of the robbery

6

were part of a single course of conduct that occurred closely in time and space. *See State v. Torres,* 2018-NMSC-013, ¶ 19, 413 P.3d 467 ("When determining whether a defendant's conduct is unitary, we have looked for an identifiable point at which one of the charged crimes had been completed and the other not yet committed." (text only) (citation omitted)). The State would have us parse out each act by Defendant as an intervening event without looking for indicia of distinctness. This obstructs the purpose of the double jeopardy clause to guard against multiple punishments for the same conduct. "'The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units.'" *State v. Frazier*, 2007-NMSC-032, ¶ 23, 142 N.M. 120, 164 P.3d 1 (quoting *Brown v. Ohio*, 432 U.S. 161, 169 (1977)).

{11}    Second, the State's presentation on appeal does not match its presentation at trial. We note that, had the State opted for a different presentation at trial, it is possible that the jury could have decided that different uses of force satisfied the elements of each crime. For example, if the jury had determined that the threatened use of the gun was sufficient for the robbery and separately that the discharge of the gun satisfied the aggravated assault, then our analysis might be different. However, as described in Part B.3, *infra*, the State's legal theory, as presented in its closing

7

argument, relies on the shooting of Victim to prove both offenses. The State may not now argue in the abstract about what it could have asked the jury to decide.

{12}     We look finally to Defendant's mental state during each act. *Franco*, 2005-NMSC-013, ¶ 7 ("To determine whether a defendant's conduct was unitary, we consider . . . the defendant's goals for and mental state during each act."). Nothing in the record suggests that Defendant's actions, including gaining entry into the diner, pushing Victim back from the door, and shooting Victim in the face, were driven by anything other than the desire to steal money from the diner. Thus, none of the *Franco* factors support the notion that the acts were "separated by sufficient indicia of distinctness." *Swafford*, 1991-NMSC-043, ¶ 26. We therefore conclude that the conduct was unitary.

**B.     The Legislature Did Not Intend to Permit Multiple Punishments Under These Two Statutes for the Same Conduct**

{13}     When conduct is unitary, we must next decide "whether the Legislature intended to permit multiple punishments" for the charged crimes. *Porter*, 2020-NMSC-020, ¶ 15; *see also Torres*, 2018-NMSC-013, ¶ 21 (acknowledging that legislative intent is the touchstone for whether multiple punishments are permissible). "In analyzing legislative intent, we first look to the language of the statute[s]" to determine whether the Legislature explicitly authorized multiple punishments for unitary conduct. *Torres*, 2018-NMSC-013, ¶ 21. Neither the armed

8

robbery nor the aggravated battery statute explicitly authorizes multiple punishments, so an analysis of the plain language of the statute does not resolve the issue. *See* § 30-16-2; NMSA 1978, § 30-3-5(A), (C) (1969); *Porter*, 2020-NMSC-020, ¶ 16. Thus, we must attempt to discern intent through other canons of construction. *Torres*, 2018-NMSC-013, ¶ 21.

{14} Early in our jurisprudence, we applied the statutory construction rule from *Blockburger v. United States*, 284 U.S. 299 (1932). *State v. Blevins*, 1936-NMSC-052, ¶ 10, 40 N.M. 367, 60 P.2d 208; *see also Blockburger*, 284 U.S. at 304 (holding a double jeopardy violation did not occur if each statute contained an element of proof not required by the other). This Court has augmented the original mechanistic application of *Blockburger* "to be more in line with United States Supreme Court precedent." *Swick*, 2012-NMSC-018, ¶ 21. Rather than a strict elements test, the "analysis demands that we compare the elements of the offense, looking at the State's legal theory of how the statutes were violated." *Porter*, 2020-NMSC-020, ¶ 8.

{15} Here, both statutes allow for alternative conduct, so comparing the elements of the offenses is inconclusive. An aggravated battery may be effectuated through an "unlawful touching or application of force" that "inflict[s] great bodily harm or does so with a deadly weapon or . . . in any manner whereby great bodily harm or

9

death can be inflicted." Section 30-3-5(A), (C). Similarly, an armed robbery occurs when a theft results from the "use or threatened use of force or violence." Section 30-16-2. At first inspection, both aggravated battery and armed robbery involve the use of force, so the two crimes share a common element. However, this abstract commonality is not enough to declare that one crime subsumes the other because the two statutes could be violated by different conduct. For example, Defendant's threatened use of force could be sufficient to violate the armed robbery statute, while the shooting could be the force used to prove aggravated battery. To establish a double jeopardy violation, the jury must have found that Defendant violated both statutes with the same use of force. We must, therefore, determine which alternative conduct the State actually proved by examining the statute, indictment, and jury instructions. *Porter*, 2020-NMSC-020, ¶ 19 ("When a defendant is charged with violating statutes that are vague, unspecific, or written in such a way that a defendant could be convicted based on alternative conduct, we review the statutory language, charging documents, and jury instructions used at trial to ascertain the state's legal theory.").

{16}     We turn then to "the state's legal theory of the case applied to the statutes at issue to determine the elements of each offense the defendant committed. This requires us to identify how the state alleged that a defendant violated the statutes at

10

issue." *Id.* ¶ 18 (citation omitted). "[I]f we determine that one of the offenses subsumes the other offense, 'the double jeopardy prohibition is violated, and punishment cannot be had for both.'" *Id.* ¶ 20 (quoting *Swick*, 2012-NMSC-018, ¶ 27). In this case, the armed robbery offense subsumes the aggravated battery conviction because the same evidence, the shooting, was used to prove each element of force.

**1.      The armed robbery conviction**

{17}     As is true of most modern statutes, armed robbery is a multipurposed statute that may be accomplished through alternative conduct. Here, Defendant could have violated the armed robbery statute under either of two theories: (1) by robbing the diner with force, through pushing or shooting Victim or (2) with the threatened use of force, by wielding the firearm or pointing the gun at Victim's head. Because there are multiple acts that the State could have used to prove either theory of armed robbery, we look to the indictment and jury instructions. *See Porter*, 2020-NMSC-020, ¶ 19 ("[W]e review the statutory language, charging documents, and jury instructions used at trial to ascertain the state's legal theory.").

**a.      Grand jury indictment**

{18}     The grand jury indictment reads:

>        Count I: Armed Robbery, . . . on or about March 23, 2013, [D]efendant
>        did take and carry away *money*, which had some value, from *Richard*

11

*Rivard*[*'s*] immediate control, intending to permanently deprive *Richard Rivard* of the property, and the [D]efendant was armed with a *handgun*, a deadly weapon or an instrument or object which, when used as a weapon, could cause death or very serious injury, and [D]efendant took the property by use or threatened use of force or violence, a second degree felony, contrary to Section 30-16-2,(F) [sic] Section 31-18-16 NMSA 1978.

While the indictment specifies that Defendant was armed with a handgun and that he "took the property by use or threatened use of force or violence," it does not specify the force used or specifically whether the use of the handgun satisfied the use of force element. We next examine the jury instructions for possible guidance.

**b.    Jury instructions**

{19}    The jury instruction read:

Instruction 7: For you to find [D]efendant guilty of Armed Robbery as charged in Count 1 the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. [D]efendant took and carried away *monies*, from *Richard Rivard*, or from his immediate control intending to permanently deprive *Richard Rivard* of the *monies*; the property had some value;

2. [D]efendant was armed with a *handgun*;

3. [D]efendant took the *monies* by force or violence or threatened force or violence;

4. This happened in New Mexico on or about the 23rd day of March, 2013.

12

Like the charging document, the instruction includes both use of force and threatened use of force. The instructions do not clarify which conduct the jury found sufficient for the conviction. However, it does indicate the force or threatened use of force was predicated on use of the handgun.

**2.      The aggravated battery conviction**

{20}      Like the armed robbery statute, a defendant may accomplish a third-degree aggravated burglary violation through alternative forms of conduct if they: (1) "inflict[] great bodily harm," (2) commit aggravated battery "with a deadly weapon," or (3) "commit[] an aggravated battery in any manner whereby great bodily harm or death can be inflicted." Section 30-3-5. We, therefore, look again to the grand jury indictment and jury instructions to understand which theory the State used to prove its case.

**a.      Grand jury indictment**

{21}      The aggravated battery with a deadly weapon indictment is more specific than that of armed robbery:

> Count V: Aggravated Battery (Deadly Weapon), . . . on or about March 23, 2013, [D]efendant did touch or apply force to *Richard Rivard*, with a *handgun* or an instrument or object which, when used as a weapon, could cause death or very serious injury, and the defendant intended to injure or [sic] another, a third degree felony, contrary to Section 30-3-5(A)(F)&(C) [sic], Section 31-18-16 NMSA 1978.

13

Though the aggravated battery indictment specifies that the force used was with the handgun, it also leaves room for another object that could cause death or serious injury. We turn then to the jury instructions.

**b.     Jury instructions**

{22}    The aggravated battery jury instruction read:

> Instruction 12: For you to find [D]efendant guilty of Aggravated Battery as charged in Count V, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant touched or applied force to *Richard Rivard* by shooting him with a deadly weapon.
>
> 2. [D]efendant intended to injure *Richard Rivard*;
>
> 3. This happened in New Mexico on or about the 23rd day of March, 2013.

{23}    Unlike the armed robbery conviction, only one conduct was sufficient to prove Defendant violated the aggravated battery statute: shooting Victim in the face. Thus, Defendant's act of shooting Victim is sufficient to violate both statutes, so it is possible that "one offense subsumes the other." *Porter*, 2020-NMSC-020, ¶ 21. However, it is also conceivable that the two statutes are violated by different forces so that neither offense is subsumed. Because "the state's legal theory cannot be ascertained using the charging documents and jury instructions, we also review testimony, opening arguments, and closing arguments to establish whether the same

14

evidence supported a defendant's convictions under both statutes." *See Porter*, 2020-NMSC-020, ¶ 19.

**3.    The State's closing argument reveals that it relied on the same use of force for both crimes**

{24}    The State's closing argument reveals its reliance on Defendant's shooting of Victim as the legal theory supporting the conviction of both offenses. First, the State argued that the shooting was the required force for an armed robbery conviction:

> [Y]ou also have an instruction on armed robbery. In order to . . . prove that offense, you must find the evidence sufficient to show that the Defendant took money away from Mr. Rivard[,] that he was armed with a handgun[,] and that he used force or threaten[ed] to use force in order to take the money. *Obviously Mr. Rivard was unable to keep the men from taking the money because he was shot. That was the use of force.*

(Emphasis added.) The State then argued that the use of force for the aggravated battery was also the shooting:

> The next element's instruction you have has to do with aggravated battery and in this case what is required is that *the evidence prove that the Defendant injured Mr. Rivard by shooting him*. . . . The Defendant had to pull the trigger to shoot Mr. Rivard. He had to put the gun into firing position.

(Emphasis added.) Under the State's legal theory presented to the jury, the conduct proving the armed robbery, the shooting, would always prove the aggravated assault.

{25}    Finally, this Court has noted in the past that when "one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty

than the base statute, it may be inferred that the legislature did not intend punishment under both statutes." *Swafford*, 1991-NMSC-043, ¶ 33. A first offense of armed robbery is a second-degree felony carrying a nine-year basic sentence.[5] NMSA 1978, § 31-18-15(A) (2007, amended 2022). By comparison, both aggravated battery with a deadly weapon and robbery (without a deadly weapon) are third-degree felonies requiring three years imprisonment. *Id.* We recognize that the relationship between standards of punishment is not a dispositive factor. *Swick*, 2012-NMSC-018, ¶ 9 n.1 ("This Court and the Court of Appeals have used the quantum of punishment to support the proposition that the Legislature did not intend to punish the two crimes separately, both when the amount of punishment is the same and when the amount differs."); *State v. Caldwell*, 2008-NMCA-049, ¶ 19, 143 N.M. 792, 182 P.3d 775 ("[T]his Court and our Supreme Court have previously noted that a difference in the quantum of punishment alone is insufficient to overcome other indicia of legislative intent."). However, here, only one element separates a violation of a simple robbery from an armed robbery—the use of a deadly weapon. *See* § 30-16-2. The particular use relied on by the State to prove the armed robbery was the shooting; that is, the

---

[5]This may be enhanced by one year if "a separate finding of fact by the court or jury shows that a firearm was used in the commission of a noncapital felony." NMSA 1978, § 31-18-16(A) (1993, amended 2022).

shooting enhanced the punishment from a third-degree to a second-degree felony. But the shooting was also used by the State to prove the aggravated battery. Under the facts of this case, the aggravated battery, as a third-degree felony, functions as the "base statute" for the armed robbery. *See Swafford*, 1991-NMSC-043, ¶ 33. This further supports the inference that the Legislature did not intend for multiple punishments under both statutes for the same conduct.

{26}   Because the shooting was the sole force used to prove the aggravated battery and armed robbery offenses, we hold that the aggravated battery conviction is subsumed in the armed robbery conviction, violating Defendant's right to be free from double jeopardy. *See Porter*, 2020-NMSC-020, ¶ 20.

**III.   CONCLUSION**

{27}   For the foregoing reasons, we remand to the district court to vacate Defendant's conviction for aggravated battery as it carries the shorter sentence. *See Torres*, 2018-NMSC-013, ¶ 28 ("When double jeopardy protections require one of two otherwise valid convictions to be vacated, we vacate the conviction carrying the shorter sentence.").

{28}   **IT IS SO ORDERED.**

---

**DAVID K. THOMSON, Justice**

17

**WE CONCUR:**

_____
**C. SHANNON BACON, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

_____
**JULIE J. VARGAS, Justice**

_____
**BRIANA H. ZAMORA, Justice**