This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41040**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JASON HENDERSON,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Dustin K. Hunter, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Van Snow, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Defendant Jason Henderson was convicted of criminal sexual penetration (CSP) in the second degree (armed with a deadly weapon) (Count 1), NMSA 1978, § 30-9-11(E)(6) (2009); CSP in the second degree (results in personal injury) (Count 2), § 30-9-11(E)(3); aggravated battery against a household member (strangulation or suffocation) (Count 3), NMSA 1978, § 30-3-16(C)(3) (2018); and aggravated battery against a

household member (deadly weapon) (Count 4), § 30-3-16(C)(2).[1] Defendant challenges his convictions, arguing that (1) the convictions violate his right to be free from double jeopardy; and (2) the district court committed reversible error by allowing the jury to view K.D. (Victim) testify with the assistance of a service dog. We agree that Defendant's convictions for Counts 2, 3, and 4 violate double jeopardy. We otherwise affirm.

## BACKGROUND[2]

**{2}** At trial, Victim testified as to what transpired during the attack that Defendant—a former roommate and romantic partner of Victim—perpetrated on her:[3] Defendant went to Victim's home the morning of the incident. After helping Defendant gather documents he needed to get an identification card and talking with him for three hours, Victim informed Defendant that she had to go to work. As Victim put her coffee cup in the sink, Defendant grabbed her from behind and strangled her until she was unconscious. While Victim was unconscious, Defendant moved her to the hallway in front of the bathroom to clean her up because she had lost control of her bladder and bowels. When Victim regained consciousness, her pants were off, she was unable to move, and Defendant was sexually assaulting her. Sometime after Victim regained consciousness, Defendant stopped sexually assaulting her and ordered her to get up off the floor. When Victim refused, Defendant armed himself with a machete and struck Victim with it. Victim got up and attempted to run to a second bathroom that locks, but Defendant caught her, threw her on a bed, demanded she open her legs, threatened her with the machete when she refused, and then sexually assaulted her a second time when she submitted to his demand. We will discuss additional facts as necessary for the analysis that follows.

## DISCUSSION

**{3}** In his brief in chief, Defendant advanced three double jeopardy arguments, involving both unit of prosecution and double description analyses: (1) his convictions on Counts 3 and 4 were subsumed within his conviction for Count 2; (2) there is insufficient indicia of distinctness to support his convictions on Counts 1 and 2; and (3) his conviction for Count 4 was subsumed within his conviction for Count 1. In its answer brief, the State responded to each of Defendant's arguments arguing that none established a double jeopardy violation. In his reply brief, Defendant only advanced the first argument identified above and did not respond to the arguments made in the State's answer brief on the other double jeopardy arguments made in his brief in chief. Because a reply brief failing to respond to arguments made in the answer brief

---

1Defendant was also convicted of interference with communications, contrary to NMSA 1978, Section 30-12-1 (1979). He has not challenged that conviction in this appeal.

2Because this is an unpublished memorandum opinion written solely for the benefit of the parties, *see State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361, and the parties are familiar with the factual and procedural background of this case, we provide only those additional facts that are necessary to our analysis of the issues below.

3We note that the counts alleged against Defendant as a result of these acts do not flow in temporal order. Count 1 relates to the second sexual assault, Count 2 relates to the first sexual assault, Count 3 relates to the strangulation, and Count 4 relates to Defendant striking Victim with the machete.

"constitutes a concession on the matter," *see State v. Coble*, 2023-NMCA-079, ¶ 16 n.7, 536 P.3d 519 (internal quotation marks and citation omitted), we limit our double jeopardy analysis to whether Defendant's convictions for Counts 3 and 4 were subsumed within his conviction for Count 2. We then address Defendant's arguments that the district court abused its discretion when it allowed the jury to see Victim testify while accompanied by a service dog.

## I. Defendant's Convictions for Aggravated Battery Against a Household Member (Counts 3 and 4) and for CSP (Personal Injury) (Count 2) Violate Double Jeopardy Protections Under These Circumstances

**{4}** Under the Fifth Amendment to the United States Constitution, "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." "The double jeopardy clause prohibits a court from imposing multiple punishments for the same offense." *State v. Phillips*, 2024-NMSC-009, ¶ 9, 548 P.3d 51 (internal quotation marks and citation omitted). "There are two types of multiple punishment cases: those cases in which a defendant is charged with multiple violations of a single statute based on a single course of conduct (unit of prosecution cases) and those cases in which a defendant is charged with violating different statutes in a single course of conduct (double[ ]description cases)." *Id.* (internal quotation marks and citation omitted). "While the analysis for each type of case focuses on whether the Legislature intended multiple punishments, the particular canons of construction we apply in ascertaining the Legislature's intent depend on the specific type of multiple punishment case in front of us." *Id.* (internal quotation marks and citation omitted). We review double jeopardy claims de novo. *Id.*

**{5}** Because we deem Defendant to have abandoned his double jeopardy challenges to all but his convictions for Counts 3 and 4 as related to Count 2, we limit our analysis to whether Defendant's convictions for Counts 3 and 4 were subsumed within his conviction for Count 2. This is a double description claim because "Defendant alleges the same conduct resulted in multiple convictions under [three] different statutes, thus we apply a double[ ]description analysis." *See State v. Serrato*, 2021-NMCA-027, ¶ 11, 493 P.3d 383.

**{6}** "In reviewing a double[ ]description challenge, we first determine whether the conduct underlying the two offenses is unitary, i.e.[,] whether the same conduct violates both statutes." *State v. Lorenzo*, 2024-NMSC-003, ¶ 5, 545 P.3d 1156 (alteration, internal quotation marks, and citation omitted). "If the conduct is not unitary, the analysis is complete because the acts are discrete and no violation of the defendant's right against double jeopardy is possible." *Id.* "If the conduct is unitary, we must next determine whether the Legislature intended for the unitary conduct to be punished as separate offenses." *Id.* "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishments in the same trial." *Id.* (internal quotation marks and citation omitted).

### A. Unitary Conduct

**{7}**   In *Phillips*, 2024-NMSC-009, ¶ 38, our Supreme Court held that we must evaluate the six factors identified in *Herron v. State*, 1991-NMSC-012, 111 N.M. 357, 805 P.2d 624, when conducting our double description analysis. The *Herron* factors are as follows: "(1) temporal proximity of the acts, (2) location of the victim during each act, (3) the existence of intervening events, (4) the sequencing of the acts, (5) the defendant's intent as evidenced by his conduct and utterances, and (6) the number of victims." *Phillips*, 2024-NMSC-009, ¶ 12. In evaluating these factors, we look to "the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury." *Id.* ¶ 38 (internal quotation marks and citation omitted). "The proper analysis is . . . whether there are sufficient facts in the record to support distinct conduct which would defeat a double jeopardy claim." *Id.* ¶ 41 (internal quotation marks and citation omitted).

**{8}**   Overall, the *Herron* factors, when viewing the evidence in the abstract, suggest that the conduct underlying Counts 2, 3, and 4 was distinct thereby defeating Defendant's double jeopardy claim. Defendant strangled Victim until she was unconscious in the kitchen. After strangling her, Defendant moved Victim's unconscious body to the hallway near the bathroom to clean her because she lost control of her bladder and bowels. Once Defendant cleaned her, Defendant sexually assaulted Victim. Defendant stopped sexually assaulting Victim when she regained consciousness. Defendant then armed himself with a machete, and used the machete on Victim. However, when examining the conduct underlying Counts 2, 3, and 4 in the context of the evidence presented, jury instructions, and the State's arguments as Defendant requests and our double jeopardy jurisprudence demands, *see Phillips*, 2024-NMSC-009, ¶ 38, we cannot conclude that Defendant's acts were separated by sufficient indicia of distinctness. We explain.

**{9}**   In relevant part, the instruction on Count 2 required the jury to find that "[D]efendant caused the insertion of his penis into the vagina of [Victim] through the use of physical force or physical violence" and "[D]efendant's acts resulted in multiple bruises and lacerations on [Victim's] body." The only testimony as to the source of bruising sustained by Victim was related to the strangulation, which was alleged in Count 3, and the machete strikes, which were alleged in Count 4. Similarly, the only testimony concerning the cause of the lacerations sustained by Victim related to the machete strikes alleged in Count 4.[4]

**{10}**   Consistent with the foregoing testimony, the State explicitly asked the jury to rely on evidence of the same force to convict on Counts 2, 3, and 4. In regard to Count 2, the State in closing arguments told the jury that "[t]here's no doubt that this act was physically forced and physically violent. And that it resulted in injury to [Victim]. We saw

---

[4]We question whether it is appropriate for the jury to be asked to find that force applied after the first sexual assault—i.e., Defendant striking Victim with the machete—was a cause of the first sexual assault. *Cf. State v. Corneau*, 1989-NMCA-040, ¶ 16, 109 N.M. 81, 781 P.2d 1159 ("The act of CSP is not a continuing offense; it is completed upon penetration. Thus, any restraint after the completed CSP is separate from the CSP itself, not inherent in the CSP, and does not constitute the same 'force or coercion' necessary to establish CSP." (citation omitted)). Nevertheless, because Defendant has advanced no argument on that point in this appeal, we do not address it further.

all the injuries, multiple bruises, laceration, lacerations on her head, blood vessels in her eyes, machete marks on her back." In its rebuttal closing, the State further argued that Count 2 did not "require[] that the act of sex itself caused the injury. Although, we did see injuries to [Victim's] vagina that [the SANE nurse] testified about. It's that the act of forcing [Victim] to have sex by strangling her, by hitting her with the machete, by beating her head caused those injuries."

**{11}**    Based on the foregoing, the jury instructions—within the context of the testimony received by the jury and the arguments made by the State—demonstrate that the State was relying on the same force to support Defendant's guilt on Counts 2, 3, and 4. Accordingly, we conclude Defendant's conduct supporting Counts 2, 3, and 4 was unitary. *Cf. State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227 ("Unitary conduct is not present . . . when the force used to commit a crime is separate from the force used to commit another crime."). Because we have concluded that Defendant's conduct as to Counts 2, 3, and 4 was unitary, we move next to the second step of the double description analysis—"whether the Legislature intended for the unitary conduct to be punished as separate offenses." *Lorenzo*, 2024-NMSC-003, ¶ 5.

## B.    Legislative Intent

**{12}**    To determine whether Defendant is protected from being punished twice for the conduct we have concluded to be unitary, "this Court must determine whether the Legislature intended to permit multiple punishments." *State v. Porter*, 2020-NMSC-020, ¶ 15, 476 P.3d 1201. "In analyzing legislative intent, we first look to the language of the statute itself." *State v. Torres*, 2018-NMSC-013, ¶ 21, 413 P.3d 467 (internal quotation marks and citation omitted). Here, neither of the statutes explicitly authorize multiple punishments. *See* § 30-9-11(E)(3); § 30-3-16(C)(2), (3). "Because the statutes do not explicitly authorize multiple punishments, we must apply other canons of construction to determine legislative intent." *State v. Begaye*, 2023-NMSC-015, ¶ 21, 533 P.3d 1057.

**{13}**    Where, as here, the applicable statutes can be violated in alternative ways, we employ a modified version of the test laid out in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See State v. Gutierrez*, 2011-NMSC-024, ¶ 48, 150 N.M. 232, 258 P.3d 1024 (adopting a modified version of the *Blockburger* test for statutes that are vague and unspecific or may be proved in the alternative). "The modified *Blockburger* analysis demands that we compare the elements of the offense, looking at the [s]tate's legal theory of how the statutes were violated." *Begaye*, 2023-NMSC-015, ¶ 24 (internal quotation marks and citation omitted). "[W]e review the statutory language, charging documents, and jury instructions used at trial to ascertain the state's legal theory." *Porter*, 2020-NMSC-020, ¶ 19. "If the state's legal theory cannot be ascertained using the charging documents and jury instructions, we also review testimony, opening [statements], and closing arguments to establish whether the same evidence supported a defendant's convictions under both statutes." *Id.* "We examine each offense keeping in mind that determining whether one offense subsumes the other depends entirely on the [s]tate's theory of the case." *Begaye*, 2023-NMSC-015, ¶ 24 (alteration, internal quotation marks, and citation omitted).

1.    **The Statutory Language, Charging Documents, and Jury Instructions Do Not Reveal the State's Legal Theory**

**{14}**  As stated above, the aggravated battery against a household member statute and the CSP statute are drafted in the alternative. Thus, they do not reveal the State's theory and we must next consider the charging document. Although the charging document goes beyond the statutory language by providing reference to the specific subsections of those statutes that Defendant is alleged to have violated and providing detailed descriptions of the conduct related to Counts 2 and 3, the charging document does not describe any specific conduct that the State alleges was relevant to Count 2. For that reason, the charging document also cannot be relied upon to determine the State's theory and we must next look to the jury instructions to determine the State's theory.

**{15}**  The jury instructions, which we set forth below, similarly make clear the State's theory as to the aggravated battery counts but not as to the CSP Count. Specifically, the force(s) alleged to have caused the injuries identified in the CSP instruction remains unclear. Consequently, the jury instructions also do not disclose the State's theory. Because we cannot ascertain the State's legal theory through the statutory language, charging instructions, or jury instructions alone, we next to turn to the testimony, opening statements, and closing arguments to establish whether the same evidence supported Defendant's convictions on Counts 2, 3, and 4. *See Porter*, 2020-NMSC-020, ¶ 19.

2.    **The Same Evidence Supported Defendant's Convictions on Counts 2, 3, and 4**

**{16}**  Defendant maintains that his convictions on Counts 3 and 4 were subsumed within his conviction for Count 2 because, under the State's theory of the case, the same evidence supported both charges. In support, Defendant refers this Court to the evidence presented at trial and the arguments the State made to the jury during closing arguments regarding Count 2. By contrast, the State focuses on the elements of the two charges without referring this Court to any portion of the record demonstrating how it did not rely on the same evidence to support the three convictions.

**{17}**  Defendant's argument is consistent with New Mexico's double jeopardy jurisprudence. *See Begaye*, 2023-NMSC-015, ¶ 28 ("In reviewing New Mexico double jeopardy jurisprudence, however, it becomes clear that the focus in ascertaining the state's theory in any particular case is not simply whether the elements differ, but whether the same evidence, that is, the same underlying conduct, is used to support both charges."); *Porter*, 2020-NMSC-020, ¶ 19 (explaining that in ascertaining what the state's theory is, our appellate courts are attempting to discern "whether the same *evidence* supported a defendant's convictions under both statutes" (emphasis added)). The State's argument, on the other hand, is not. *See Begaye*, 2023-NMSC-015, ¶ 32 (stating that *Torres*, 2018-NMSC-013; *State v. Silvas*, 2015-NMSC-006, 343 P.3d 616; and *Serrato*, 2021-NMCA-027 explain that "a determination that each statute contains

distinct elements in the abstract does not eliminate the possibility of a double jeopardy violation under the modified [*Blockburger*] approach"). Accordingly, we proceed to examine the evidence presented at trial and the State's arguments to the jury concerning that evidence.

**{18}** In relevant part, the jury was instructed on Counts 2, 3, and 4 as follows. As to Count 2 CSP, causing personal injury, the jury was instructed:

> For you to find [D]efendant guilty of [CSP] causing personal injury as charged in Count 2, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant caused [Victim] to engage in sexual intercourse;
>
> 2. [D]efendant caused the insertion of his penis into the vagina of [Victim] through the use of physical force or physical violence;
>
> 3. [D]efendant's acts resulted in multiple bruises and lacerations on [Victim's] body.

As to Count 3 aggravated battery against a household member (strangulation or suffocation), the jury was instructed:

> For you to find [D]efendant guilty of aggravated battery against a household member (strangulation or suffocation) as charged in Count 3, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant touched or applied force to [Victim] by wrapping his arm around her neck;
>
> 2. [D]efendant intended to injure [Victim];
>
> 3. [D]efendant strangled [Victim; and]
>
> 4. [Victim] was a household member of [D]efendant.

As to Count 4 aggravated battery with a deadly weapon on a household member, the jury was instructed:

> For you to find [D]efendant guilty of aggravated battery with a deadly weapon on a household member as charged in Count 4, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. [D]efendant touched or applied force to [Victim] by hitting her with a machete;

2. [D]efendant intended to injure [Victim; and]

3. [Victim] was a household member of [D]efendant.

As we stated above in our unitary conduct analysis, it is clear that the State relied upon the same evidence to support all three charges. The State specifically asked the jury in its closing argument to consider the strangulation charged in Count 3 and the machete use charged in Count 4 to convict Defendant on Count 2. The State's closing argument was unequivocal. It urged the jury to find Defendant guilty of Count 2 based on the evidence that established the only source of the bruising and lacerations to Victim's body came from Defendant strangling her and hitting her with the machete.

**{19}** Plainly stated, under the State's theory, for the jury to convict on Count 2, it necessarily had to have found that Defendant strangled Victim, as charged in Count 3, and struck her with the machete, as charged in Count 4. Consequently, under *Begaye* and the cases cited therein, and under the State's theory, the elements of Counts 3 and 4 were subsumed within the elements of Count 2. Therefore, our inquiry is over and we conclude that Defendant's right to be free from double jeopardy was violated. *See Porter*, 2020-NMSC-020, ¶ 20 ("[I]f . . . one of the offenses subsumes the other offense, the double jeopardy prohibition is violated, and punishment cannot be had for both." (internal quotation marks and citation omitted)).

**{20}** Because the sentences for Counts 3 and 4 are shorter than the sentence for Count 2, we order the district court, on remand, to vacate the convictions for Counts 3 and 4 and resentence Defendant. *See State v. Montoya*, 2013-NMSC-020, ¶ 55, 306 P.3d 426 (explaining that when "otherwise valid convictions must be vacated to avoid violation of double jeopardy protections, we must vacate the conviction carrying the shorter sentence"). *Compare* § 30-9-11(E) (defining the CSP offense at issue here as a second-degree felony), *and* NMSA 1978, § 31-18-15(A)(7) (2019, amended 2024) (stating the basic sentence for a second-degree felony is nine years imprisonment), *with* § 30-3-16(C) (defining the aggravated battery offenses at issue here as a third-degree felony), *and* § 31-18-15(A)(11) (2019) (stating that the basic sentence for a third-degree felony is three years imprisonment).

**{21}** We emphasize that our double jeopardy holding in the present case is the result of the necessary inferences arising from the jury instructions and the State's presentation to the jury. The same facts may have resulted in a different constellation of charges or reliance on different evidence to support each crime. *See Lorenzo*, 2024-NMSC-003, ¶ 11 (noting that "had the [s]tate opted for a different presentation at trial, it is possible that the jury could have decided that different uses of force satisfied the elements of each crime"). In this instance, the CSP and aggravated battery charges overlapped, and each subsumed the other, because "the [S]tate relied upon the same conduct to support both charges." *See Begaye*, 2023-NMSC-015, ¶ 31. Generally, this

is not the case when CSP and aggravated battery are both charged. Where the State does not rely on the same conduct to support each offense, double jeopardy is not violated by conviction of both crimes.

**{22}** Our review, however, is confined to the record that was created. *See Lorenzo*, 2024-NMSC-003, ¶ 11 (relying on the state's legal theory "as presented in its closing argument" and not an argument "in the abstract").

## II. Defendant Failed to Preserve His Arguments Concerning Victim's Use of the Service Dog During Her Testimony

**{23}** The day before trial, the State moved to allow a service dog to accompany Victim when she testified. In their motion, the State indicated that the Court could "instruct the jury to refrain from making assumptions or drawing conclusions based on [the service dog's] presence." On the morning of the first day of trial, the district court heard the State's motion. Over Defendant's objection, the district court granted the State's motion, stating as follows:

> I'll allow the dog to come in. Pre-COVID we had a method of bringing the dog in before we bring the jury in. But right now under our current rules, the courtroom is the jury room. So there is no practical way to do that. Typically I've only done that before to hide the dog just to satisfy everybody, but I've never understood why it would be objectionable. So the [c]ourt is going to grant the [S]tate's motion to have the service dog under the table. She can bring it in.
>
> I think to minimize it for the jury, we'll bring in through the back of the courtroom. But there's no real way to keep the jury from seeing the dog. But we won't bring the dog all the way through the courtroom. We'll bring right through the back, the dog will be seen for only a few seconds.

After jury selection, but before trial, the district court again advised that the service dog was to be brought in through the courtroom's back door. At no point before or during trial was a jury instruction concerning the service dog discussed, and neither the State nor Defendant tendered such an instruction. Finally, there is no mention on the record concerning the service dog being brought in or out of the courtroom.

**{24}** In this appeal, Defendant argues that the district court erred by allowing Victim to testify with the service dog for two reasons: (1) the district court failed to inquire as to Victim's need for the service dog and balance that need against any prejudice to Defendant; and (2) the State failed to show that Victim had *any* need for the service dog. However, before the district court, Defendant did not object to Victim being allowed to use the service dog while testifying because of a lack of demonstrable need. Instead, Defendant only objected to the jury seeing the service dog. Accordingly, we conclude that the arguments Defendant now advances are unpreserved.

**{25}** "On appeal we only consider issues raised in the trial court unless the issues involve matters of jurisdictional or fundamental error." *State v. Paiz*, 2011-NMSC-008, ¶ 33, 149 N.M. 412, 249 P.3d 1235. We employ the fundamental error exception to the preservation rule "only under extraordinary circumstances to prevent the miscarriage of justice." *State v. Silva*, 2008-NMSC-051, ¶ 13, 144 N.M. 815, 192 P.3d 1192 (internal quotation marks and citation omitted). "Accordingly, we will use the doctrine to reverse a conviction only if the defendant's guilt is so questionable that upholding a conviction would shock the conscience, or where, notwithstanding the apparent culpability of the defendant, substantial justice has not been served. Substantial justice has not been served when a fundamental unfairness within the system has undermined judicial integrity." *Id.* (internal quotation marks and citation omitted).

**{26}** At trial, Defendant did not contest that he was guilty of aggravated battery or CSP. Instead, he asked that the jury convict him only of CSP in the third degree rather than in the second degree as urged by the State. Accordingly, we cannot say that Defendant's guilt is so questionable or substantial justice has not been served because Victim testified while accompanied by a service dog. For that reason, we are not persuaded that Defendant's assertions of error as to Victim's use of the service dog while testifying involve jurisdictional or fundamental error.

**{27}** Because we conclude that Defendant's arguments concerning Victim's use of a service dog while testifying are not preserved and do not involve jurisdictional or fundamental error, we decline to address them further.

**CONCLUSION**

**{28}** For these reasons, we remand to the district court to vacate Defendant's convictions for Counts 3 and 4 and resentence Defendant accordingly. We otherwise affirm.

**{29}** **IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**